UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GEORGE KLEINMAN and SHERRI KLEINMAN,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a National banking corporation, and DOES 1-50,<br><br>Defendants. | Case No. 3:22-cv-00407-LRH-CLB<br><br>ORDER |

Before the Court is Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") motion to dismiss Plaintiffs George and Sherri Kleinman's (collectively, the "Kleinmans") First Amended Complaint. ECF No. 14. The Kleinmans opposed the motion (ECF No. 15) and Wells Fargo replied to the opposition (ECF No. 20). For the reasons articulated below, the Court grants the motion. Furthermore, the Court denies Wells Fargo's motion to dismiss the original complaint (ECF No. 7) as moot.

**I.    BACKGROUND**

This matter stems from the alleged loss or theft of valuable items the Kleinmans placed in their safe deposit box at a Nevada-based Wells Fargo bank. Around October 24, 2018, the Kleinmans entered a "Safe Deposit Box Lease Terms" agreement (the "Lease Agreement") with the Wells Fargo bank branch located at 776 Tahoe Boulevard, Incline Village, Nevada. ECF No. 13 at 4. Near or on that same day, George Kleinman deposited a collection of gold and silver coins into the Kleinmans' safe deposit box. *Id*. at 5. On August 31, 2021, George Kleinman returned to the bank to retrieve the items stored in the safe deposit box. *Id*. at 6. Upon collection of the items, George Kleinman conducted an inventory of the coins and "suspected theft of a portion" of the

gold coins. *Id*. On September 1, 2021, the Kleinmans reported the suspected theft to Wells Fargo who opened a case to further investigate the matter (Case #0620210920424-4272). *Id*. The Kleinmans also contacted the Washoe County Sheriff and filed a Grand Larceny theft report on October 12, 2021. *Id*. at 7. According to the Kleinmans, Wells Fargo denied the Washoe County Sheriff's department access to their safe deposit box as part of the department's criminal investigation. *Id*.

The Kleinmans filed their original complaint in the Second Judicial District Court of the State of Nevada in and for Washoe County on August 31, 2022. ECF No. 1-1. Shortly after, Wells Fargo removed the matter pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1 at 1. On November 11, 2022, Wells Fargo filed a motion to dismiss the Kleinmans' original complaint (ECF No. 7), but ten days later the parties filed a stipulation to extend time for the Kleinmans to amend the original complaint (ECF No. 11). United States Magistrate Judge Carla L. Baldwin granted the stipulation (ECF No. 12), and the Kleinmans filed the First Amended Complaint on December 19, 2022 (ECF No. 13).

The First Amended Complaint alleges eight causes of action against Wells Fargo and DOES 1-50: (1) negligence; (2) breach of the implied covenant of good faith and fair dealing; (3) deceptive trade practices as elderly persons and consumer fraud victims (Nev. Rev. Stat. §§ 598.0915 and 41.600); (4) consumer fraud victims based upon violations of deceptive trade practices act (Nev. Rev. Stat. § 41.600); (5) conversion; (6) loss of property entrusted by bailment; (7) breach of the implied warranty of merchantability; and (8) breach of the implied warranty of fitness for a particular purpose. ECF No. 13 at 11–20. The Kleinmans seek damages in the amount of $300,000 for the missing coins, $600,000 for damages suffered by older or vulnerable persons pursuant to Nev. Rev. Stat. § 41.1395, punitive and exemplary damages, and costs and attorney's fees. *Id*. at 20. On January 13, 2023, Wells Fargo filed a motion to dismiss the First Amended Complaint. ECF No. 14. The motion is discussed below.

## II.   LEGAL STANDARD

A party may seek the dismissal of a claim under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss,

enough facts must be pled "to state a claim to relief that [was] plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). The plausibility standard requires the claimant to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678–79. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a [claim] to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

"Although generally the scope of review on a motion to dismiss for failure to state a claim is limited to the Complaint, a court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiffs' claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels—Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal quotations and citations omitted). The court may "treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).

**III.    DISCUSSION**

As a preliminary matter, the Court finds that it may consider the Lease Agreement (ECF No. 13-1) in its analysis of Wells Fargo's motion to dismiss because it is referred to in, and attached to, the First Amended Complaint and is central to the Kleinmans' claims. *See Daniels—Hall*, 629 F.3d at 998. The Court also notes that both parties agree the Lease Agreement may be considered as part of Wells Fargo's motion to dismiss without converting it into a motion for summary

1  judgment. ECF No. 14 at 5; ECF No. 15 at 4. Therefore, the Lease Agreement is considered for
2  purposes of this Order.
3        The Lease Agreement contains a governing law provision which states that the "[l]aws,
4  rules, and regulations of the United Sates; and [l]aws of the state where you leased your [safe
5  deposit] Box" govern the agreement. ECF No. 13-1 at 10. Federal courts "look to state law to
6  determine the existence of a contract" unless the issue concerns whether state or local statutes or
7  ordinances create constitutionally protected contractual rights. *San Diego Police Officers' Ass'n v.*
8  *San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 737 (9th Cir. 2009). Moreover, federal courts
9  hearing matters on diversity "use the law of the forum state" to interpret contracts. *U.S. for Use &*
10 *Benefit of Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989). The Court finds that the
11 existence and interpretation of the Lease Agreement is to be analyzed according to Nevada law.

    **A.**    **The Lease Agreement governs the relationship between Wells Fargo and the Kleinmans and its clear language must be enforced.**

14       In its motion, Wells Fargo argues that the First Amended Complaint should be dismissed
15 in its entirety because the Lease Agreement governs the parties' relationship and, therefore, the
16 Kleinmans are bound by its terms. ECF No. 14 at 6. In response, the Kleinmans claim that Wells
17 Fargo's "a contract is a contract" argument cannot stand in today's legal world due to modern
18 consumer fraud and deceptive trade practices laws. ECF No. 15 at 3. The Kleinmans also argue
19 that they were not made aware of many of the Lease Agreement's terms and conditions. *Id*. at 6.
20 In reply, Wells Fargo argues that the Kleinmans failed to address many of the motion's dispositive
21 arguments which shows a lack of viability as to their claims. ECF No. 20 at 1, 2.
22       Although the Court acknowledges the valuable loss which has occurred, the Kleinmans are
23 bound by the Lease Agreement's terms. Nevada has long recognized a public interest protecting
24 the freedom of persons to contract. *Holcomb Condo. Homeowners' Ass'n, Inc. v. Stewart Venture,*
25 *LLC*, 129 Nev. 181, 187 (2013) (citation and quotation omitted). A party is conclusively presumed
26 to know and assent to the contents of a written contract when he or she signs or accepts unless the
27 other contracting party commits fraud or another wrongful act. *Campanelli v. Conservas Altamira,*
28 *S.A.*, 86 Nev. 838, 841 (1970) (citation and quotation omitted).

Here, there is no question that the Kleinmans accepted the terms and conditions of the Lease Agreement. Their acceptance can be inferred from their use the safe deposit box. Their acceptance is clearer, however, through their own admission that they entered into the Lease Agreement for valuable consideration as co-lessees. ECF No. 13 at 4, 5. The Kleinmans' acceptance of the Lease Agreement was a valid exercise of their freedom to contract. As they have admitted, they entered and accepted the Lease Agreement which means they are conclusively presumed to have known and assented to its terms.

As such, the Kleinmans are bound by the Lease Agreement. The Lease Agreement relevantly states that (1) Wells Fargo must exercise ordinary care as to the Kleinmans' box; (2) Wells Fargo is not responsible for knowing the contents of or having a duty to care for or insure the contents of the Kleinmans' box; and (3) the entire risk of loss shifts from Wells Fargo to the Kleinmans if they elect to store money or jewelry in their box:

> **What responsibilities and liabilities do Wells Fargo and you have to each other?**
> We are responsible for exercising 'ordinary care' and for complying with these Lease [Agreement] Terms. 'Ordinary care' requires only that we follow standards that do not vary unreasonably from the general standards followed by similarly situated banks. Our policies and procedures are solely for our internal use and do not establish a higher standard of care for us than is otherwise established by these Lease [Agreement] Terms or required by applicable law.
>
> **Does Wells Fargo have any responsibility for the contents of your Box?**
> We will not be deemed for any reasons to know the contents of your Box. We will not be deemed to have possession of, or a duty to care for, or a duty to insure, the contents while they are in the Box. We will not have any liability to you or any other person for destruction of, or damages to, the contents of the Box […] Except to the extent we fail to exercise ordinary care or to comply with these Lease [Agreement] Terms, you agree to indemnify and hold us harmless from all claims, demands, losses, liabilities, judgments, and expenses (including attorney's fees and expenses) arising out of or in any way connected with our performance under the Lease Agreement… You agree this indemnification will survive termination of the Lease Agreement.
>
> **What is the extent of Wells Fargo's liability for your items?**
> If a loss results from our negligence or willful misconduct, our total liability will be the lesser of your actual uninsured loss or $500. Furthermore, if you use the Box to store the following items, you assume the entire risk of loss unless clear and convincing evidence is provided to us showing the existence, ownership, quality, and quantity of such items(s), and their placement in the Box: money; antiques; jewelry; works of art or craft and collectibles; and securities or instruments payable to bearer. You agree we will not be liable to you or any third party for any special, consequential, indirect or punitive damages.

ECF No. 13-1 at 14. The Lease Agreement language is clear and unambiguous regarding Wells Fargo's liability for the gold coins the Kleinmans placed in their safe deposit box. Clear contract language should be enforced exactly how it is written. *Lewis v. State of Nevada*, Case No. 2-07-

CV-01109-KJD, 2010 WL 3860642, at *3 (D. Nev. Sept. 28, 2010) (citing *Canafora v. Coast Hotels & Casinos*, Inc., 121 Nev. 771, 776 (2005)). The plain language of the Lease Agreement explicitly absolves Wells Fargo of liability and risk of loss for the gold coins the Kleinmans deposited into their box. Because the parties' relationship is governed by the Lease Agreement, and the Kleinmans assented to its terms, the Court must enforce its terms and conditions as written. These are sufficient grounds for the Court to dismiss the entire First Amended Complaint.

The Court additionally notes that there are clear and express provisions of the Lease Agreement that support the dismissal of claims asserted in the First Amended Complaint. Generally, there is a provision in which the Kleinmans agreed to indemnify and hold Wells Fargo harmless "from all claims, demands, losses, liabilities judgments and expenses (including attorney's fees and expenses)" under the Lease Agreement. ECF No. 13-1 at 14. Second, there are provisions that support the dismissal of individual claims. For example, the Kleinmans' sixth cause of action is for loss of property entrusted by bailment. ECF No. 13 at 18. The Lease Agreement expressly states that it "will not be deemed to create a bailment. [Wells Fargo and the Kleinmans'] relationship will be governed by applicable laws specifically relating to safe deposit box services provided by a national bank, and not those applicable to bailor and bailee relationships." ECF No. 13-1 at 11. The Kleinmans' sixth cause of action directly contradicts this provision. The Kleinmans assented to provisions like these throughout the Lease Agreement. Such provisions contain clear and unambiguous language that must be enforced as written.

Accordingly, the Court finds that the Lease Agreement controls the relationship between the Kleinmans and Wells Fargo. Because the Lease Agreement contains unambiguous language, and the Kleinmans accepted and assented to that language, it must be enforced as written. The Court finds sufficient grounds to dismiss the First Amended Complaint in its entirety as it directly contradicts the terms of the Lease Agreement.

  **B. The Kleinmans have failed to plausibly plead that the Lease Agreement is unenforceable because it is unconscionable.**

In the First Amended Complaint, the Kleinmans claim that the Lease Agreement is unenforceable because it is unconscionable, anti-consumer, and against Nevada public policy. ECF

6

No. 13 at 10. As evidenced in the parties' filings, unconscionability is primarily at issue for purposes of the motion. In its motion, Wells Fargo argues that the entire First Amended Complaint should be dismissed because the Kleinmans failed to plead procedural and substantive unconscionability. ECF No. 14 at 6, 7. In response, the Kleinmans argue that they sufficiently pled both types of unconscionability in Paragraph XXVI of the First Amended Complaint (ECF No. 15 at 4) which states:

> **XXVI.** That prior to and at the time of entering into the Agreement WELLS FARGO never directed The Kleinmans to and never explained any of the specific fine print language of the Agreement, purporting to exculpate liability for the injuries sustained by Plaintiffs, to compel binding arbitration, to maintain confidentiality of the theft, to waive trial by jury, to shorten any limitations of actions period, to waive implied warranties of merchantability and fitness for particular purpose, to waive actionable claims, to waive evidentiary presumptions, and to limit WELLS FARGO's liability for the theft by an unreasonable liquidated damages provision in light of the anticipated or actual harm caused by the breach under the legal theories as alleged hereinbelow, and considering the criminal conduct as alleged herein. Such language under these alleged circumstances is unconscionable, anti-consumer, and is against Nevada public policy, and therefore, the Agreement is void and unenforceable.

(ECF No. 13 at 10). The Kleinmans also bring new unconscionability arguments in their response including arguments that the Lease Agreement (1) is an adhesion contract, (2) contains exculpatory language that was never pointed out, and (3) illegal because it required the Kleinmans to inform Wells Fargo of the suspected theft before law enforcement. ECF No. 14 at 5–7.[1] In reply, Wells Fargo argues that the Kleinmans' unconscionability theory is untenable. ECF No. 20 at 2–5. Also in reply, Wells Fargo argues that the Kleinmans' adhesion contract and exculpatory language arguments lack merit and are unsupported by the law (*Id*. at 4), and that their illegality argument is based on a misreading of the Lease Agreement (*Id*. at 7).

"Parties are free to contract, and the courts will enforce their contracts if they are not unconscionable[.]" *Martin v. Martin*, 520 P.3d 813, 819 (Nev. 2022) (citation omitted). Here, the Court finds that the Kleinmans have failed to offer factual support to plausibly plead that the Lease Agreement is unconscionable. In Nevada, both procedural and substantive unconscionability are required to invalidate a contract or provision of a contract as unconscionable. *U.S. Home Corp. v.*

---

[1] The Court does not consider the Kleinmans' equitable estoppel argument. ECF No. 15 at 7. The Kleinmans allege a single conclusory sentence as factual support for this argument. Furthermore, equitable estoppel was not pled in the First Amended Complaint nor does it apply here.

*Michael Ballesteros Tr.*, 134 Nev. 180, 190 (2018) (citing *Burch v. Second Jud. Dist. Ct. of State ex rel. Cnty. of Washoe*, 118 Nev. 438, 443 (2002) ("Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause as unconscionable.")). The presence of substantive and procedural unconscionability is determined on a sliding scale; where there is strong evidence of substantive unconscionability, less evidence of procedural is required and vice versa. *Becker v. Keshmiri*, Case No. 3-19-CV-00602-LRH-WGC, 2020 WL 2733944, at *4 (D. Nev. May 26, 2020).

Here, the Kleinmans have failed to plausibly plead both types of unconscionability in the First Amended Complaint. This is particularly true when the First Amended Complaint is read alongside the Lease Agreement. First, the Kleinmans make no reference to either procedural or substantive unconscionability in the First Amended Complaint. The Kleinmans argue that Paragraph XXVI of the First Amended Complaint sufficiently pleads substantive and procedural unconscionability yet neither type of unconscionability is even named. ECF No. 13 at 10. The Court is left to dissect Paragraph XXVI and the First Amended Complaint to determine which alleged facts could support plausibility as to either type of unconscionability.

Substantive unconscionability is present when a contract "contains oppressive terms or is one-sided." *Mohazzabi v. Wells Fargo, N.A.*, Case No. 2-18-CV-02137-RFB-VCF, 2019 WL 4675768, at *4 (D. Nev. Sept. 25, 2019) (citing *Gonski v. Second Judicial Dist. Court of State ex rel Washoe*, 245 P.3d 1164, 1169 (Nev. 2010), overruled on other grounds by *U.S. Home Corp.*, 415 P.3d 32). Procedural unconscionability deals with whether a party "lacks a meaningful opportunity to agree to the [contract or] clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause [or contract] and its effects are not readily ascertainable upon a review of the contract." *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 554 (2004), overruled on other grounds by *U.S. Home Corp.*, 415 P.3d 32. Procedural unconscionability is supported by the "use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *Id*.

A review of the Lease Agreement reveals that the very few facts alleged in the First Amended Complaint are untrue and fail to plausibly plead procedural and substantive

unconscionability even when generously construed. Courts are not "required to accept as true allegations that contradict exhibits attached to" a complaint. *Daniels-Hall*, 629 F.3d at 998. For example, the Kleinmans claim that "most of the preprinted, language utilized [in the Lease Agreement] was set forth in 'fine print' having approximately 8 font size" (ECF No. 13 at 5), and that Wells Fargo never directed them to or explained any of that "fine print" (*Id*. at 10). As previously stated, the use of "fine print" can support a finding of procedural unconsciability. *D.R. Horton*, 120 Nev. at 554, overruled on other grounds by *U.S. Home Corp.*, 415 P.3d 32.

After careful inspection, the Court finds that there is no "fine print" contained in the Lease Agreement. The Lease Agreement's body-font is consistently sized and conspicuous throughout the document. The only notable deviation from this standard is the document's headings which are offset using bolded typeface. *See generally*, ECF No. 13-1. Courts may reject claims of procedural unconscionability based on fine print when the operating document has consistently sized typeface throughout even in the presence of bolded headings. *See Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) (holding there was no procedural unconscionability in an arbitration clause which appeared in the same size font as the rest of the document even alongside bolded terms). The Kleinmans' factual allegations that most of the Lease Agreement consisted of "fine print" and that Wells Fargo never pointed out or explained the "fine print" are without merit; there is no "fine print" to point out or explain. Thus, the Kleinmans argument that the use of "fine print" supports a finding of procedural unconscionable is not plausible.

For the first time in their response to Wells Fargo's motion, the Kleinmans also argue that the Lease Agreement is unenforceable because its exculpatory language is adhesive. ECF No. 15 at 5. As previously stated, adhesion contracts can also support a finding of procedural unconscionability. *D.R. Horton*, 120 Nev. at 554, overruled on other grounds by *U.S. Home Corp.*, 415 P.3d 32. However, the Kleinmans offer no facts to support this argument. Instead, the Kleinmans offer a very brief and broad description of adhesion contracts, with no cited authority, and a reiteration that courts need not enforce unconscionable contracts. ECF No. 15 at 5. Without factual support, such allegations amount to conclusory statements that do not support plausibility of procedural unconscionability.

For these reasons, the Court finds that the Kleinmans failed to adequately allege factual support that the Lease Agreement is procedurally unconscionable. Because procedural unconscionability is required to invalidate a contract as unconscionable, the Court finds that the Kleinmans have failed to meet the plausibility standard required on a motion to dismiss for its argument that the Lease Agreement is unconscionable and, consequentially, unenforceable.

### C. The Kleinmans have failed to plausibly plead that the Lease Agreement is unenforceable because it is illegal.

The Kleinmans secondary unenforceability argument is based on illegality. ECF No. 15 at 6, 7. Courts are not required to enforce contracts that are illegal. *Martin*, 520 P.3d at 819 (citation omitted). In their opposition to the motion, the Kleinmans argue that the Lease Agreement contains a provision which requires a safe deposit box lessee to notify Wells Fargo of a suspected theft before notifying law enforcement which is illegal. *Id*. at 7. In reply, Wells Fargo argues that the Kleinmans have misread the provision at issue and that the Lease Agreement does not impose a temporal notification requirement or prohibit a lessee from contacting law enforcement prior to Wells Fargo. ECF No. 20 at 7.

After careful review, the Court finds that the Lease Agreement does not require a safe deposit box lessee to notify Wells Fargo of a suspected theft before notifying law enforcement. The pertinent provision reads:

> **What happens if you make a claim against Wells Fargo relating to your Box?**
>
> We will research or investigate any claim you make regarding your Box. After you submit a claim, we will require from you:
>
> - A completed affidavit(s) on a form that we provide;
> - Law enforcement notification; [. . .]

ECF No. 13-1 at 15. Simply, this provision requires the Kleinmans to submit proof of law enforcement notification to Wells Fargo as part of the Wells Fargo claim process. There is no temporal requirement that the box lessee submit a claim to Wells Fargo first and then submit a claim to law enforcement after, as alleged. Specifically, this provision provides the box lessee with a list of items to complete as part of the Wells Fargo claim process and nothing more. The Court

is not required to presume this illegality allegation true because it is contradicted by the express language of the Lease Agreement.

Furthermore, in Nevada, "a finding of illegality is not fatal to every contract [. . .], when some portions of a contract are illegal, but not all, Nevada law allows courts to sever the illegal portions [. . .] and then enforce the legal portions." *Bart St. III v. ACC Enterprises, LLC*, Case No. 2-17-CV-00083-GMN-VCF, 2018 WL 4682318, at *4 (D. Nev. Sept. 27, 2018) (citing *Vincent v. Santa Cruz*, 647 P.2d 379, 381 (Nev. 1982)). Even if the alleged provision were determined to be illegal, which this Court does not find, such determination would not necessarily be fatal to the entire Lease Agreement. Accordingly, the Kleinmans have failed to meet the motion to dismiss plausibility pleading standard for their illegality argument.

For the reasons articulated herein, the Court grants Wells Fargo's motion to dismiss the First Amended Complaint with prejudice. Acknowledging a valuable loss has occurred here, the Court finds that the parties' relationship is governed by the Lease Agreement and that its clear language must be enforced as written. The Court notes the motion to dismiss pleading standard is one of mere plausibility and not probability. *See Ashcroft*, 556 U.S. at 678–79. However, the very few and attenuated factual allegations in the First Amended Complaint that support plausibility as to the Lease Agreement's unconscionability and illegality do not square with the language of the Lease Agreement itself.

### IV. CONCLUSION

IT IS THEREFORE ORDERED that Wells Fargo's motion to dismiss the First Amended Complaint (ECF No. 14) is **GRANTED with prejudice**.

IT IS FURTHER ORDERED that Wells Fargo's motion to dismiss the original complaint (ECF No. 7) is **DENIED as moot**.

IT IS FURTHER ORDERED that the Clerk of the Court shall close this case.

IT IS SO ORDERED.

DATED this 25th day of July, 2023.

LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

11